United States District Court
Northern District of Indiana
Hammond Division                                        Case No. 2:13-cv-00099-rlm-jem

**Malibu Media, llc**

Plaintiff

–v–

**John Doe subscriber assigned ip address 71.194.56.83**

Defendant

# Defendant's Response to Plaintiff's Motion to Strike

## Introduction

Malibu Media's complaint accuses John Doe of directly infringing on the copyrights it allegedly holds in explicit pornographic films. Doe asserted nine affirmative defenses in response. Malibu Media filed a motion to strike several of the affirmative defenses, believing them to be lacking and legally insufficient. But it would be premature for the court to strike the defenses without allowing Doe to conduct discovery.

## Argument

### A.  Legal Standard

Federal Rule of Civil Procedure 12(f) gives courts the power to strike insufficient defenses: "Upon motion made by a party . . . the court may order stricken from the pleading any insufficient defense." For purposes of this motion, "all well-pleaded facts are taken as admitted on a motion to strike but conclusions of law or of fact do not have to be treated in that fashion."[1] Matters outside the pleadings are normally not considered. *Id.* In general, motions to strike defenses are disfavored:

---

[1]  5a C. Wright & A. Miller, *Federal Practice and Procedure* § 1380, at 655–56 (1990).

> Motions to strike a defense as insufficient are not favored by the courts because of their dilatory character. Thus, even when technically appropriate and well-founded, they often are not granted in the absence of a showing of prejudice to the moving party. Nonetheless, they are a useful and appropriate tool when the parties disagree only on the legal implications to be drawn from uncontroverted facts. But even when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits.
>
> Nor will a Rule 12(f) motion be granted if there is a substantial question of fact or a mixed question of law and fact that cannot be resolved, even if it is possible to determine the issue by drawing inferences from facts and statements that are not disputed…. In sum, a motion to strike will not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits.[2]

On the other hand, motions to strike "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case."[3] Still, the Court may only strike those defenses "so legally insufficient that it is beyond cavil that defendants could not prevail on them."[4] In determining whether an affirmative defense is viable, a court does a three-part analysis.[5]

First, a court should assess whether the matter is appropriately pled as an affirmative defense. "Only matters that deserve a clear 'no' answer will be stricken to make the pleadings more concise."[6] Second, a court should consider whether the defense has been adequately pled under the requirements of Federal Rules of Civil Procedure 8 and 9. If a party fails to meet these basic pleading requirements, a

---

[2] *Id.,* § 1381, at 672–78.

[3] *United States v. Marisol, Inc.,* 725 F. Supp. 833, 836 (M.D. Pa. 1989).

[4] *United States v. Kramer,* 757 F. Supp. 397, 410 (D. N.J. 1991).

[5] *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1295 (7th Cir. 1989)).

[6] *Id.*

court should dismiss the defense with leave to amend. Finally, a court should evaluate the sufficiency of the defense pursuant to the standard followed in assessing 12(b)(6) motions, *i.e.,* the defense should be stricken only if the defendant cannot prove any set of facts in support of the defense that would defeat the complaint.[7]

A defense should not be stricken "if there is any real doubt" about its validity, and "the benefit of any doubt should be given to the pleader."[8] Since it is often unclear whether a defendant should properly plead a argument as a denial or a defense, and because a defense not plead is waived, a "cautious pleader" will often err on the side of labeling an argument as a defense.[9] There is no reason to penalize such a mistaken pleading by granting a motion to strike.[10]

## B.  Malibu Media's motion is premature

### 1.  Abandonment, Copyright Misuse

Malibu Media claims that Doe's first affirmative defense should be stricken as insufficient. "In copyright, waiver or abandonment of copyright 'occurs only if there is an intent by the copyright proprietor to surrender rights in his work.'"[11] Malibu Media contends that this lawsuit is in itself evidence that it hasn't abandoned its copyright protection. But just bringing this suit does not fully rebut the claim that Malibu Media has abandoned its copyright. Further discovery is needed for Doe to show that Malibu Media has not only failed to follow established protocols to 'takedown' copyrighted material, but also has left certain material on Bit Torrent sites specifically to pursue litigation.

---

[7]  *Id.*

[8]  *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 736 (N.D. Ill. 1982).

[9]  *Id.*

[10] *Id.*

[11] *A&M Records, Inc. v. Napster, Inc.*, 239 F.3D 1004, 1026 (9th Cir. 2001) (*citing* 4 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* ¶ 13.06 (2000)).

Case No. 2:13-cv-00099-rlm-jem

Malibu Media further states that it hasn't engaged in any anti-competitive behavior. "The doctrine of misuse 'prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly.'"[12] Malibu Media has used this to state that Doe's affirmative defense is insufficient. But Malibu Media *has* tried to "control areas outside the monopoly," otherwise why would Malibu Media include 'Exhibit c' with its pleadings? Malibu Media has continued to attach this 'Exhibit c' for unknown reasons even after being admonished. As the United States District Court for the Western District of Wisconsin noted in a recent order,[13] these allegations are "nonsensical." Complaints are pleadings and have *no* evidentiary purpose. In fact, Malibu Media has used this information to try to pressure settlements.[14] Third-party negotiators utilized by Malibu Media have also stated that they will report to other media groups the 'alleged' downloads if settlement is not reached.[15]

Therefore, Doe's affirmative defense should not be stricken and the Court should allow further discovery in this matter.

2. **Communications Decency Act and/or the Online Copyright Infringement Liability Limitation Act**

Malibu Media claims that the affirmative defense based on the Communications Decency Act and/or the Online Copyright Infringement Liability Limitation Act should be stricken because it is improper. But what is at issue is whether Doe illegally downloaded copyrighted material. Doe denies this charge. In light of the

---

[12] *Assessment Technologies of WI, LLC v. WIREdata, Inc.,* 350 F.3d 640, 647 (7th Cir. 2003).

[13] Id.

[14] *Malibu Media, LLC, v. John Doe*, subscriber assigned IP address, 68.40.46.12, 2:13-cv-12201-DPH-DRG, Document #7, Declaration of Morgan E. Pietz, Section h.

[15] *Malibu Media, LLC, v. John Does 1-15*, 3:12-cv-00369-LAB-DHB, Document #19, Exhibit G.

difficulties involved with tracing Bit Torrent downloads,[16] it is quite possible that Doe did not actively engage in this behavior. Why? Malibu Media only 'traced' John Doe through an Internet Protocol Address. This has been shown to be a questionable source of accurate information.[17] The reason for this?

The increased use of technology like Network Address Translation and home WiFi have created difficulties in accurately targeting Bit Torrent downloads. Quite simply, Doe could have had her WiFi used by a third party to download copyrighted material. If this were the case, Doe would have provided internet access for this illegal activity and should not be liable, just as an Internet Service Provider is not liable for the activities of others. Further discovery is warranted to pursue this defense.

Therefore, Doe's affirmative defense should not be stricken and this Court should allow further discovery in this matter.

3. Unclean Hands

Malibu Media claims that Doe's unclean hands defense stricken. But it would be premature and unfair to strike this defense before proper discovery. Malibu Media has failed to send out Digital Millennium Copyright Act (dmca) takedown notices over its allegedly copyrighted material. Yet sending these notices is the overwhelming strategy to combat pirating used by the Motion Picture Association of America, the Recording Industry Association of America, and many other media entities that target Bit-Torrent sites.[18]

Why would Malibu Media allow their copyrighted material to remain on Bit Torrent sites? Why wouldn't Malibu Media issue dmca takedown notices to

---

[16] http://dmca.cs.washington.edu/dmca_hotsec08.pdf

[17] https://freedom-to-tinker.com/blog/mfreed/inaccurate-copyright-enforcement-questionable-best-practices-and-bittorrent-specificatio/

[18] http://www.google.com/transparencyreport/removals/copyright/

Google and limit the unlawful consumption of its pornographic material? Because if Malibu Media engaged in these activities it would have no basis for the current flood of lawsuits it's filed throughout the country.

Malibu Media's odd behavior is why further discovery in this matter should be allowed. It would be premature for this Court to strike Doe's unclean-hand defense. This is especially true when the Court takes into consideration the major difficulties that have been found to exist with Bit Torrent tracing programs.[19] Many of the results are inaccurate and tracing programs have found that printers who do not even possess the technology to download Bit Torrent materials were responsible for engaging in this 'illegal' behavior. If Malibu Media was seriously trying to limit the proliferation of its copyrighted material, it would utilize all available tools and engage in the mostly wildly employed legal deterrent, dmca takedown notices, to cut off links to that media.

Therefore, Doe's Affirmative Defense should not be stricken and this Court should allow further discovery in this matter.

4. **Waiver**

Malibu Media claims that Doe's waiver defense should be stricken because it is insufficient. But as argued earlier, it would be premature for this Court to limit discovery on these matters.  Waiver and abandonment are clearly different defenses and are not duplicative. Doe would like to engage in further investigation, especially because of Malibu Media's peculiar tactics in enforcing its copyrights.

Therefore, Doe's Affirmative Defense should not be stricken and this Court should allow further discovery in this matter.

5. **Unconstitutionally Excessive Damages**

Malibu Media claims that Doe's unconstitutionally excessive damages defense

---

[19]  http://dmca.cs.washington.edu/dmca_hotsec08.pdf

should be struck as improper. But Doe has not had the opportunity to engage in proper discovery and as such, it would be premature for this Court to cut off a possible defense. If Doe's home Wifi was used to download copyrighted material without Doe's consent, then the damages alleged by Malibu Media would constitute excessive damages. It is just far too early for Doe to rule out this defense. Furthermore, Malibu Media would not be prejudiced by the inclusion of this defense and as such should not be allowed to strike it from Doe's pleading.

Therefore, Doe's Affirmative Defense should not be stricken and this Court should allow further discovery in this matter.

## Conclusion

It's too early in the case to limit Doe's defenses—especially on a motion to strike. Malibu Media's motion should be denied.

Date: September 17, 2013

/s/ J. Thomas Vetne

J. Thomas Vetne | 19606-64

**Jones Obenchain, llp**

600 KeyBank Building
202 S. Michigan St.
Post Office Box 4577
South Bend, IN 46634-4577

574.233.1194 | 574.233.8957 fax

jtv@jonesobenchain.com

Defendant's Attorney

## Certificate of Service

On September 17, 2013, I electronically filed this motion with the clerk using the cm/ecf system which sent notification Paul J. Nicoletti, plaintiff's attorney.

/s/ J. Thomas Vetne
J. Thomas Vetne | 19606-64