# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

MALIBU MEDIA, LLC,                    )
      Plaintiff,                     )
                         )
      v.                              )       CAUSE NO. 2:13-CV-99-JEM
                         )
JOHN DOE, *subscriber assigned IP*    )
*address 71.194.56.83*,               )
      Defendant.                     )

## OPINION AND ORDER

This matter is before the Court on a Motion to Strike [DE 18], filed by Defendant on August 17, 2013. Defendant asks that Paragraph 23 and Exhibit C of Plaintiff's Complaint be stricken as "scandalous" pursuant to Federal Rule of Civil Procedure 12(f). On September 3, 2013, Plaintiff filed a response. On September 6, 2013, Defendant filed its reply.

## PROCEDURAL BACKGROUND

Plaintiff Malibu Media, LLC, is the producer of adult films. This Court is just one of many currently handling copyright infringement lawsuits brought by Malibu Media throughout the federal judicial system. As in this case, the typical complaint alleges that one or more bits of one or more of Plaintiff's copyrighted films were downloaded by a defendant identified only by an Internet Protocol ("IP") address. The complaint is then followed by a motion to serve a subpoena on the Internet Service Provider ("ISP") assigning the IP address in order to identify the person associated with the address. In the Northern District of Indiana, Plaintiff has filed thirty-six different lawsuits since July 2012, thirty-four of which have nearly identical complaints, all with an attached Exhibit C. In each, the complaint states that Exhibit C contains the results of "enhanced surveillance" and is "provided for evidentiary purposes only." Compl. ¶ 23.

In this case, Plaintiff alleges that Defendant infringed the copyrights of twenty-three of its films by using BitTorrent software from an IP address of 71.194.56.83 to copy and distribute constituent elements of those films. On May 9, 2013, the Court granted Plaintiff's request to subpoena Defendant's ISP to request the identity of the subscriber to whom that IP address was assigned. Because of the explicit nature of the films at issue and because the ISP subscriber is not necessarily the only person to use an assigned IP address, the order included provisions to prevent the name returned by the ISP from appearing publicly on the docket for at least the early stages of litigation.

On June 25, 2013, Plaintiff filed the response it received to its subpoena from the ISP, which contained the name of the subscriber to IP address 71.194.56.83 on the dates of the alleged downloads. Plaintiff served the person named in the subpoena response with a Summons and the Complaint. On August 15, 2013, Defendant filed an Answer. On August 17, 2013, Defendant filed an Amended Answer and the instant Motion to Strike.

## ANALYSIS

Defendant objects to Paragraph 23 and Exhibit C of the Complaint. Paragraph 23 alleges:

> [Plaintiff's investigator] has also engaged in enhanced surveillance of other digital media being distributed by Defendant. The results of this more intensive surveillance are outline in Exhibit C. [The lawsuit is] solely limited to content owned by Plaintiff as outlined in Exhibit B. Exhibit C is provided for evidentiary purposes only.

Compl. ¶ 23. Exhibit C is a list of fifty-four media files, including mainstream films and television programs, music, twenty-two files with titles prefixed by Malibu Media's website name, two other files with titles indicating they contain pornography, and a file named "IORRT 3.5.cmd." Defendant

argues the Exhibit is "scandalous" and—because Plaintiff admits it has no copyright interest in many of the files—"appears to be [attached] to pressure defendants to settle claims before the defendant gets publicly linked to 'adult' movies." Mot. 2. Accordingly, Defendant asks that Paragraph 23 of the Complaint and Exhibit C be stricken pursuant to Federal Rule of Civil Procedure 12(f).

Rule 12(f) permits a court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A matter is "scandalous" if it "reflects cruelly" on the objecting party's moral character or uses language that "detracts from the 'dignity of the court.'" *Khalid Bin Talal Bin Abdul Azaiz Al Seoud v. E. F. Hutton & Co., Inc.*, 720 F. Supp. 671, 686 (N.D. Ill. 1989) (quoting *Skadegard v. Farrell,* 578 F.Supp. 1209, 1221 (D.N.J. 1984)). Motions to strike are generally disfavored, however, in part because they delay judicial proceedings. *Heller Fin., Inc. v. Midwhey Powder Co., Inc*., 883 F.2d 1286, 1294 (7th Cir. 1989). Therefore, scandalous material will not ordinarily be stricken unless it also "bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664-65 (7th Cir. 1992). Scandalous but relevant material may nonetheless be stricken as "immaterial" if it "has no essential or important relationship to the claim" or provides unnecessarily specific details in connection with matters which are material. *Chi. Printing Co. v. Heidelberg USA, Inc.*, No. 01 C 3251, 2001 WL 1646567, at *1 (N.D. Ill. Dec. 21, 2001) (finding allegations of past fraudulent activities potentially relevant to the plaintiff's claims but striking as immaterial specific details of that fraud because "it is not the function of a complaint to plead evidence"). Whether to strike scandalous or immaterial portions of a pleading is within the sound discretion of the court. *Talbot*, 961 F.2d at 665.

Plaintiff does not directly contest Defendant's characterization of Exhibit C as "scandalous." The Court finds that at least one of the entries on Exhibit C not subject to Plaintiff's copyright could potentially "reflect cruelly" on Defendant's morals and, therefore, accepts Defendant's characterization of the Exhibit.

Plaintiff argues, however, that the information contained in Exhibit C is "potentially relevant" to its claims against Defendant and should therefore not be stricken. Resp. 10. First, Plaintiff states that it uses Exhibit C in these cases to confirm that the ISP subscriber, and not someone else in the household, is the person who downloaded its films. Because anyone connecting to the subscriber's Internet connection would have appeared to Plaintiff's investigator to be using the same IP address, the possibility exists that someone other than the subscriber performed the alleged downloads. Plaintiff asserts that Exhibit C helps it verify that the subscriber is the downloader or, if he is not, allows it to amend the Complaint to name the correct person. Plaintiff explains that Exhibit C "paints a picture" of the downloader because information about that person's hobbies, interests, software and hardware owned, and other unique characteristics can be inferred from what that person downloads. Resp. 4. Plaintiff states that after receiving the ISP subscriber's name from the subpoena response, it is able to obtain an abundance of information about the subscriber through discovery and from social media, Internet message board postings, work biographies, and many other sources. If that investigation uncovers the subscriber has the same hobbies, interests, etc., as is reflected in Exhibit C, Plaintiff will use that correlation as evidence that the subscriber performed the alleged downloads—including of Plaintiff's works—using BitTorrent from the given IP address. If, however, Plaintiff's investigation determines someone else in the

household better fits the profile of the person reflected in the Exhibit C downloads, Plaintiff can amend its Complaint accordingly.

For example, Plaintiff poses the hypothetical of an Exhibit C which shows "four Chicago White Sox games, an on-line Fantasy Roll Playing Game, [and] a how-to manual for fly fishing" downloaded from the same IP address as its films and during the same time period. If Plaintiff's investigation showed that the subscriber "is a lifelong White Sox fan, is 'Merlin' in the on-line Fantasy Role Playing Game, [and] enjoys fly-fishing," it may help identify the subscriber as the downloader, and therefore the correct party to sue. Resp. 4. In this example, however, at the time the Complaint was filed, Plaintiff could only plead that "four Chicago White Sox games, and on-line Fantasy Roll Playing Game, [and] a how-to manual for fly fishing" were downloaded. It could not plead that the defendant "is a lifelong White Sox fan, is 'Merlin' in the on-line Fantasy Role Playing Game, [and] enjoys fly-fishing" because it would not yet know this information. Without this information against which to compare it, Exhibit C is left dangling off the end of the Complaint with no apparent relation to the controversy. In fact, nothing in the Complaint itself explains that Exhibit C was intended to eventually serve this purpose, initially leaving the Court to guess at its purpose. Some courts with near-identical cases have assumed the worst. *See, e.g.,Malibu Media LLC v. Doe*, No. 3:13-cv-205, 2013 U.S. Dist. LEXIS 74442, at *5 (W.D. Wisc. May 28, 2013) ("One needn't be a cynic to suppose that an intended purpose–perhaps the primary purpose–of Exhibit C to the complaint . . . is to increase the pressure on a subsequently identified Doe defendant to settle before s/he is publicly linked to hardcore/deviant titles that are completely irrelevant to plaintiff's actual claims in the lawsuit.")

Some of the contents of Exhibit C may eventually become relevant to the identification of the infringer should Defendant contest the issue. Therefore, the Court cannot say that Exhibit C "bears no possible relation to the controversy." *Talbot*, 961 F.2d at 664-65. However, the specific details contained in Exhibit C are themselves immaterial to Plaintiff's claims. The Complaint alleges that because "Defendant is the only person who can be identified as the infringer" at the time of filing and because "Defendant is the most likely infringer," Plaintiff is able to allege that "Defendant is the infringer." Compl. ¶¶ 24, 25. Plaintiff has already served Defendant with a Summons and Complaint and is moving forward under the premise that Defendant *is* the infringer. Further evidence to establish Defendant's identity is not necessary for pleading purposes and is otherwise immaterial to Plaintiff's claim. *See Malibu Media, LLC v. Tashiro*, No. 1:13-cv-205, 2013 WL 4763498, at *4 (S.D. Ind. Sept. 4, 2013) (striking Exhibit C because it is "*immaterial* to the allegations in the complaint" even if its information "may become *relevant* evidence at some point"); *Chi. Printing Co.*, 2001 WL 1646567, at *1 (finding allegations of past fraudulent activities potentially relevant to the plaintiff's claims but striking as immaterial the specific details of that fraud because "it is not the function of a complaint to plead evidence"); *Malibu Media LLC v. Doe*, No. 3:13-cv-205, 2013 U.S. Dist. LEXIS 74442, at *4 (W.D. Wisc. May 28, 2013) ("Complaints are pleadings, not affidavits, so they have no 'evidentiary purpose.'") Therefore, any value Exhibit C may have in identifying the actual infringer does not weigh against striking it.

Plaintiff also argues that Exhibit C should not be stricken because information in it is relevant to Defendant's knowledge of the infringing activity taking place through her assigned IP address. Plaintiff says Exhibit C shows that a large amount of data was downloaded, much of which

was copyrighted media files. It asserts that someone downloading a large amount of data would likely receive notices from her ISP that her household was using excessive bandwidth and also Digital Media Copyright Act ("DMCA") notices alerting her to copyright infringing activity occurring from her household. Plaintiff argues these notices would be evidence of a defendant's knowledge and lack of mistake regarding the infringement allegations. Again, nothing in the Complaint explains that Exhibit C was intended to serve this purpose, and it is not otherwise apparent. Furthermore, the discovery process will provide an opportunity for Plaintiff to obtain and use information about any notices Defendant may have received regardless of whether Exhibit C is attached to the Complaint. Therefore, Exhibit C is irrelevant and unnecessary to this purpose.

Plaintiff describes additional uses for the information Exhibit C, some of which are undoubtedly valuable to Plaintiff's case but none of which require that the Exhibit be attached to the Complaint. It argues that because the Exhibit helps in identifying the downloader, it is better able to survive a motion to dismiss from a theoretical defendant who argues that the Complaint does not plausibly identify the downloader. This argument fails, however, because the information in Exhibit C need not be in the Complaint for it to be used to defend a motion to dismiss. *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992)("[A] plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved . . . would entitle him to judgment.")

Plaintiff also argues that Exhibit C provides "evidentiary support" to the Complaint's "factual contentions" regarding the downloader's identity, support Federal Rule of Civil Procedure 11(b) requires an attorney have. Rule 11 does not, however, require that such "evidentiary support"

be included in the Complaint, just that it exist. If the adequacy of Plaintiff's evidentiary support regarding the downloader's identity were questioned, Plaintiff could include the contents of Exhibit C in its defense, but it need not be preemptively included in the Complaint.

Next, Plaintiff argues that because pleadings define the boundaries of discovery, including Exhibit C in the Complaint allows it to conduct discovery related to infringements of third party works. However, if the infringement of third party copyrights were not relevant to Plaintiff's own claim of copyright infringement or "reasonably calculated to lead to the discovery of admissible evidence" without being mentioned in the Complaint, it would not become relevant simply by virtue of being attached to the Complaint. Fed. R. Civ. P. 26(b)(1). If Defendant fails to cooperate regarding discovery related to the alleged third party copyright infringements, the Court can address its relevance at that time and Plaintiff can use Exhibit C in making its argument, but Plaintiff need not include it in the Complaint.

Plaintiff also argues that attaching Exhibit C to the Complaint allows innocent subscribers to review it to identify the actual infringer and, using Exhibit D—labeled "Exculpatory Evidence Request"—provide that information to Plaintiff. Providing the information in Exhibit C prior to service of the Complaint in past cases may have allowed a subscriber to avoid ever being formally sued. *See Declaration of M. Keith Lipscomb, Esq.*, Resp. Exh A., at ¶ 40 (stating that Exhibit C and the "Exculpatory Evidence Request" form were provided the subscriber prior to serving them with a complaint in past cases). However, Plaintiff states that it no longer talks to defendants prior to service of the Complaint. Because Exhibit C is now received by defendants along with service of the Complaint, it effectively has become a means of discovery. Further, in addition to asking for information regarding other authorized users of the subscriber's Internet connection, the

"Exculpatory Evidence Request" form asks subscribers if they have enabled wireless access to the Internet connection, whether a BitTorrent client has been installed by any authorized user, whether any authorized user has ever legally purchased Plaintiff's works, and many other questions that go well beyond simply giving the subscriber the opportunity to deflect blame to someone else. By attaching these Exhibits, Plaintiff appears to be attempting to get around the Federal Rules of Civil Procedure prohibition on discovery prior to the discovery planning meeting between parties. Fed. R. Civ. P. 26(d). Especially concerning is that receiving the "Exculpatory Evidence Request" with the Summons and Complaint may give the appearance, especially to unrepresented defendants, of the Court's endorsement, making them believe they must respond. While the Court recognizes that the anonymous nature of an IP address makes identifying the proper defendant prior to service difficult for Plaintiff, the Plaintiff must still follow the rules regarding discovery, and the Court cautions it against future use of the "Exculpatory Evidence Request" form in other cases.

Finally, Plaintiff argues that striking Exhibit C is unnecessary because the Court has already permitted Defendant to proceed anonymously, mitigating the potential for embarrassment. The Seventh Circuit has "insisted that litigation be conducted in public to the maximum extent consistent with respecting . . . facts that should be held in confidence." *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006). Should the Court determine in the course of this litigation that Defendant's privacy interest no longer trumps the public's interest in transparency of the courts, this Court may no longer allow Defendant to proceed anonymously. *See Malibu Media, LLC v. John Does*, No. 1:12-cv-263, 2013 WL 22550238 (N.D. Ind. May 21, 2013) (lifting restriction on using Defendant's real name in Complaint or publicly filed communications). Therefore, the potential for unwarranted embarrassment may reemerge.

Although it is not necessarily improper to include extraneous information in a complaint, this case presents special considerations. Because anyone connecting to a subscriber's Internet connection would appear to use the same IP address, there is a fair chance that someone other than the subscriber performed the alleged downloads. Accordingly, the Court is more sensitive to the need to protect Defendant from unwarranted embarrassment. *See AF Holdings LLC v. Rogers*, No. 12cv1519 BTM(BLM), 2013 WL 358292, at *2 (S.D. Cal. Jan. 29, 2013) (limiting discovery to "ensure that potentially innocent subscribers are not needlessly humiliated and coerced into unfair settlements"). Because the Court finds Paragraph 23 and Exhibit C are scandalous and either immaterial to Plaintiff's claims or irrelevant to Plaintiff's stated purposes for attaching it, use of the Court's discretion to strike them is warranted. Fed. R. Civ. P. 12(f). Additionally, Plaintiff will suffer no harm from Exhibit C being stricken from the Complaint because doing so will not prevent Plaintiff from using the information in it for any of the purposes Plaintiff proposes as the litigation progresses.

For the foregoing reasons, the Court hereby **GRANTS** Defendant's Motion to Strike [DE18] and **STRIKES** Paragraph 23 and the portion of the Complaint labeled "Exhibit C" from the Complaint, at [DE 1].

Because the Clerk of the Court is unable to redact only the stricken portions of the Complaint, the Court further **DIRECTS** the Clerk of the Court to **SEAL** the Complaint [DE 1] and **ORDERS** Plaintiff to file an amended Complaint, on or before **November 26, 2013**, without the stricken portions but **with no other changes**. For ease of administration, the Court also **ORDERS** Defendant to file an amended Answer, also **with no other changes**, on or before **December 3, 2013**.

SO ORDERED this 19th day of November, 2013.


 s/ John E. Martin
_____
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record